IN THE MATTER OF NOLA ARLENE ALLEN.

[No. 772S93. Filed July 31, 1978.]

*Don A. Tabbert, Berton W. O'Bryan, Sparrenberger Duvall Tabbert & Lalley,* of Indianapolis, for petitioner.

*Sheldon A. Breskow,* Executive Secretary, Disciplinary Commission, *David B. Hughes,* Trial Counsel, Indiana Supreme Court Disciplinary Commission, of Indianapolis, for respondent.

PIVARNIK, J.—This cause is before us on a petition for reinstatement to the practice of law in the State of Indiana by Nola Arlene Allen, filed on December 29, 1975. Petitioner was suspended from the practice of law in the State of Indiana for a period of two years on June 26, 1973. *In re Allen,* (1973) 260 Ind. 528, 297 N.E.2d 429. She brings this petition pursuant to Ind. R. Adm. & Dis. 23 § 4.

The Disciplinary Commission filed its petition with this court pursuant to Ind. R. Adm. & Dis. 23 § 18(b), requesting that a Hearing Officer be appointed to hear Nola Allen's petition for reinstatement and to make written findings of fact and recommendations to the Commission. On March 6, 1976, Myron J. Hack was appointed Hearing Officer. He conducted a hearing on Petitioner's petition for reinstatement on June 15, and 16, 1976, and on March 31, 1977.

Hearing Officer Hack filed his report, including his Findings of Fact, with the Disciplinary Commission, which

findings we summarize as follows. Petitioner Allen was 44
years of age at the time of the evidentiary hearings, and a
resident of the city of South Bend, Indiana. She was ad-
mitted to the Bar of the Supreme Court of Indiana on De-
cember 8, 1954, and was thereafter admitted to practice,
apparently on foreign license, in the State of Michigan. Pur-
suant to these admissions, she was admitted to practice in
the United States District Court for the Southern District
of Indiana and the United States Courts of Appeals for the
Seventh and Sixth Circuits. From and after June 26, 1973,
pursuant to the Order of the Supreme Court of Indiana, the
petitioner was and remained suspended from the practice
of law in the State of Indiana. In the disciplinary proceed-
ing that led to her suspension, the petitioner was charged with
seven counts of violations of the *Code of Professional Re-
sponsibility*. The first hearing officer, who had presided at
these disciplinary hearings, found against petitioner Allen
on five counts. In its Order of June 26, 1973, the Supreme
Court of Indiana adopted that hearing officer's Findings as
its own. Among the five counts which were found against
petitioner was Count 6, as to which this court quoted the
first hearing officer's report as follows in *Allen, supra,* 260
Ind. at 534, 297 N.E.2d at 432:

> "*AS TO COUNT 6.* That the Respondent, Nola A. Allen,
> was attorney for the estate of one Nellie Johnson, of which
> estate Genevieve Coleman was the duly appointed Adminis-
> tratrix and that, in such capacity as counsel for the estate,
> the Respondent did receive a check from the Administra-
> trix, Mrs. Coleman, for the amount of Seven Hundred
> Fifty Dollars ($750.00), which was to be used to pay the
> Indiana inheritance tax; the Respondent did not pay, nor
> did Respondent attempt to pay, the inheritance tax to the
> proper authorities prior to the initiation of these proceed-
> ings, neither did she return the money to Mrs. Coleman;
> that said estate was not closed by the Respondent and Mrs.
> Coleman had to secure additional counsel to close said
> estate, and that such conduct on the part of the Respondent
> involves moral turpitude and violates D.R. 1-102(a) (3, 4,
> 5 & 6), D.R. 6-101(a) (3) and D.R. 9-102(b) (4), Code of

Professional Responsibilities for Attorneys at Law, Indiana Annotated Statutes (Special Supplement 1971)."

The Order of the Supreme Court of Indiana under date of June 26, 1973, concluded at 260 Ind. at 536, 297 N.E.2d at 433, that the petitioner:

"should be disbarred from the practice of law in this state for a period of two (2) years beginning from the date of this order, and the Clerk of this Court is directed to strike her name from the Roll of Attorney's admitted to the practice of law in this state."

Despite the language of this Order, Hearing Officer Hack correctly concluded that petitioner was not in fact *disbarred* but was rather suspended for a period of two years, beginning June 26, 1973. This discipline imposed on the petitioner was unrelated to physical or mental illness, or infirmity, or to the use of or addiction to intoxicants or drugs.

Hearing Officer Hack further found that petitioner's Petition for Reinstatement was filed more than two years subsequent to the date of her 1973 suspension, which term of suspension had elapsed. He found that she desired in good faith to obtain restoration of her privileges to practice law in the State of Indiana, and that she had not practiced law in this state or attempted to do so since the date she was disciplined. The Hearing Officer found that with the exception of the payment of costs of her disciplinary proceeding, which were by the Order of the Supreme Court of Indiana taxed against her, petitioner Allen had complied fully with the terms of the Order for discipline. The record in the reinstatement hearings was silent on the issue of payment of costs. Hearing Officer Hack found that petitioner's conduct since the discipline had been exemplary and above reproach, and that her attitude toward the misconduct for which she was disciplined was one of genuine remorse. Though petitioner did not express remorse concerning alleged misconduct at the time of her original disciplinary hearings, Hearing Officer Hack stated that this did not affect his find-

ing that petitioner had an attitude of remorse for two reasons: petitioner denied such misconduct, and in any event she was clearly not disciplined for it. However, applying the clear and convincing evidence test set forth in Ind. R. Adm. & Dis. 23 § 4(a), the Hearing Officer found that:

"[T]he only issue arising on the record as to which there is question concerns the Petitioner's present understanding of and attitude toward the standards that are imposed upon members of the bar, requiring a determination of whether she will conduct herself in conformity with such standards, and imposing upon the Hearing Officer the burden of finding as a fact whether the Petitioner can safely be recommended to the legal profession, the courts and the public, as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and an officer of the courts. . . . [T]he Hearing Officer now finds that the Petitioner does not have a proper understanding of and attitude toward the standards that are imposed upon members of the bar, finds that there is grave doubt that she will conduct herself in conformity with such standards if she is reinstated, and concludes that she cannot safely be recommended to the legal profession, the courts and the public, as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and an officer of the courts, all of which Findings stem from the determination that the Disciplinary Commission proved at the evidentiary hearing by clear and convincing evidence that, at those evidentiary hearings, the Petitioner knowingly gave false testimony concerning her involvement in the manufacture, fabrication, and use of corrupt and false evidence in making her defense to the charges brought against her by the Commission that led to the discipline imposed upon her by the Supreme Court of Indiana."

In a memorandum following these findings of fact, Hearing Officer Hack explained his findings as to petitioner's present fitness as follows:

"This Hearing Officer . . . does find that petitioner testified falsely when, at the evidentiary hearings held in this reinstatement matter, she testified repeatedly that she has

no knowledge as to these transactions. Her testimony in this respect is inherently improbable. . . . The petitioner was evasive and imprecise; in some passages, she gave incredible responses when they are viewed in the context of the rest of the record."

In sum, based on the evidence before him and his observations during this entire reinstatement proceeding, Hearing Officer Hack concluded that petitioner "committed an original act of misconduct at the evidentiary hearing held on her Petition for Reinstatement, namly perjury."

In view of the above findings by Hearing Officer Hack, the Disciplinary Commission asserts to this court that the petitioner knowingly gave false testimony at the evidentiary hearings in this reinstatement matter. This false testimony allegedly concerned Count 6 in the original disciplinary proceeding in relation to which the first hearing officer and this court found that petitioner did not pay nor attempt to pay the inheritance tax of one Nellie Johnson's estate, even though petitioner had received a $750.00 check for this purpose from administratrix Coleman. Petitioner testified at the original disciplinary proceeding that she attempted to pay the inheritance tax due in the Johnson estate by purchasing four money orders totaling $750.00, and mailing them to the Treasurer of Marion County in June, 1972. She at that time presented as evidence four American Express money order stubs, which she claimed were the stubs from her attempted payment. She testified at that time that she had sent these money orders to the Treasurer of Marion County, Indiana. The Disciplinary Commission's arguments here, and the findings of Hearing Officer Hack which they are based on, all relate to a continuing controversy concerning petitioner Allen's testimony about the money order stubs. This matter was discussed again before Hearing Officer Hack in the present reinstatement petition, and before the Disciplinary Commission herein.

It is the position of the petitioner that the consideration of her testimony and its credibility by the original hearing

officer in 1973, is res judicata as to this hearing. Therefore, the argument goes, such question could not be considered in the present petition for reinstatement by the hearing officer, the Commission, or this Court. The minority position in the present Disciplinary Commission is to the same effect: that even assuming without necessarily agreeing that petitioner committed perjury in the original disciplinary proceeding, such matter was already considered by this court, in its original Order, and necessarily included in that decision.

Central to the question of petitioner's alleged perjury in the original disciplinary proceeding was the evidence of the four American Express money order stubs, which petitioner had alleged evidenced a payment to the Marion County Treasurer in June, 1972. In such original proceeding, both Commission and petitioner stipulated to the following regarding these stubs:

"No. 1—according to the record of L. S. Ayres & Company the money orders which have been introduced as Respondent's Exhibits 8 A through D were received by L. S. Ayres & Company sometime during the latter part of December, 1972.

No. 2—according to the records of L. S. Ayres & Company, the money orders, stubs of which have been introduced as Respondent's Exhibits 8 A through D, were sold by L. S. Ayres & Company sometime during January of 1973, more specifically on January 17, 1973.

No. 3—according to the records of L. S. Ayres & Company, a report of the sale of these money orders was made by L. S. Ayres & Company to American Express sometime on or about January 19, 1973.

No. 4—that the L. S. Ayres' custom and practice is not for an employee of L. S. Ayres to fill out the stub of the money order at the time that the money order is purchased."

The perjury question arose in the present reinstatement proceeding when the Disciplinary Commission attorney, Mr. Hughes, asked petitioner Allen on cross-examination if she had remorse for the conduct for which she was found guilty under Count 6 of the original petition. She answered that

she was remorseful that her conduct gave the appearance of wrongdoing, but that she did not do wrong because she had sent the money orders to the Marion County Treasurer's office though she could find no proof that she had done so. Cross examination was pressed further, and petitioner testified that she had no knowledge whatever of any of the facts involving the money orders purchased, during the first hearing, from L. S. Ayres and Company in January of 1973, and offered in evidence in that hearing before the first hearing officer as evidence of the money orders she had alleged she purchased in June of 1972 and mailed to the Treasurer's Office. The money orders, stubs and cover letter that petitioner alleged to have been sent in June of 1972 were never found. It was further brought out in evidence in the present reinstatement hearing that early in March of 1973, the money orders purchased at L. S. Ayres and Company in January of 1973, were mailed to the Treasurer's office in Marion County, carrying the date of June, 1972, and accompanied with a cover letter allegedly written by this petitioner and dated June 7, 1972. These money orders were immediately sent back to Nola Allen at her address in Indianapolis by the Treasurer's office. They were received by her at her office and were taken to her attorney's office immediately at his request. At the reinstatement hearing she at first denied that she ever received these money orders back from the Treasurer's Office, and said she did not know how her attorney received them. Over objection from the petitioner, a handwriting expert was allowed to testify that he examined the money orders and stubs purchased at L. S. Ayres in January of 1973 and that in his opinion they were filled out and signed by Nola Allen.

Nola Allen's testimony was that one Howard Bolles had conceived the idea of purchasing new money orders and backdating them to present into evidence in her original hearing an attempt to prove that they were the lost money orders that she allegedly purchased and transmitted to the Treasurer's Office in June of 1972. Petitioner's testimony further devel-

oped that she did not know Howard Bolles was doing this and that he was the one who mailed them to the Treasurer's office and then hid the stubs in her home where she would find them and think that she had discovered the long-lost stubs from June of 1972. There was a long involvement between petitioner and Howard Bolles, that involved a close relationship both personally and in her business affairs, and that included forgeries by him on her bank accounts, and that also included his knowledge and involvement in her professional affairs in the practice of law. It was said that Bolles could write petitioner's name as well as she could, and therefore was able to forge documents and checks allegedly written by her. Howard Bolles has several times been convicted of felonies, and at the time of this hearing was serving time in Michigan City State Prison. He has filed an affidavit before Hearing Officer Hack in which he stated all of these above facts were true.

Ind. R. Adm. & Dis. 23 § 1 provides as follows:

"Each person granted the privilege to practice law in this State has the obligation to conduct himself at all times in a manner consistent with the trust and confidence reposed in him by this Court and in a manner consistent with his duties and responsibilities as an officer or judge of the courts of this State. This Court has exclusive jurisdiction of all cases in which an attorney who is admitted to the bar of this Court or who practices law in this State (hereinafter referred to as "attorney") is charged with misconduct. The procedures hereinafter set forth shall be employed and construed to protect the public, the court and the members of the bar of this State from misconduct on the part of attorneys and to protect attorneys from unwarranted claims of misconduct."

This same Disciplinary Rule further provides, at § 4(a)(7) and § 4(a)(8):

"No person whose privilege to practice law has been suspended shall be eligible for reinstatement to practice law in this State unless he establishes by clear and convincing evidence before the disciplinary commission of this Court that: * * *

(7) He has a proper understanding of and attitude towards the standards that are imposed upon members of the bar and will conduct himself in conformity with such standards;

(8) He can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the bar and an officer of the Courts."

Under these provisions, Hearing Officer Hack properly permitted the facts into evidence which raise the qeustion of perjury before us. Hearing Officer Hack found that petitioner's defense in the reinstatement hearing was so fraught with contradiction and incredibility as to amount to perjury. He stated that her testimony was evasive and imprecise, and that in some passages she gave incredible responses when viewed in context with the rest of the record. An examination of the transcript gives ample support to the hearing officer's findings in this regard. The petitioner certainly does not carry her burden before the Disciplinary Commission, under sections 4(a)(7) and 4(a)(8), when she testifies falsely as to facts within her knowledge, and when that same evidence tends to show that a fraud was committed upon the hearing officer in the original disciplinary hearing.

Although the parties did stipulate that the American Express money order stubs, offered in evidence at the original hearing, were not as they were represented to be when they were offered in evidence, the result before the original hearing officer was to make that evidence fail as proof of petitioner's allegation that she had sent money orders in June of 1972 to the Marion County Treasurer. This event came near the end of said hearing, and it appears that no further evidence was presented to that hearing officer involving the origin of these money orders or the procedures followed in handling them thereafter. It is apparent, then, that the issue of any fraud practiced upon the first hearing officer was not

taken into consideration by that hearing officer, beyond the fact that petitioner had failed in her defense. Neither the findings of this first hearing officer, nor the findings of this court based thereon, were based upon any fraud practiced by petitioner at her original disciplinary proceeding. No discipline was therefore imposed upon this petitioner for those acts, and the present case cannot constitute a second punishment for this same act.

Further, the wrong committed by the petitioner was not in her professing innocence of commission of the act for which she was disciplined and found to be guilty. *Compare In re Hiss,* (1975) 368 Mass. 447, 333 N.E. 2d 429. Rather, her wrong was that in attempting to prove her innocence she gave untrue testimony, under oath, before the very tribunal attempting to make the truth determination of her fitness to be reinstated. *See, e.g., In re Kone,* (1916) 90 Conn. 1440, 97 A. 907. It thus cannot be said in any sense that petitioner's conduct before the original hearing officer involving fraud and false testimony, a substantial part of which was discovered after the hearing, is res judicata in a hearing to determine her fitness to be reinstated. The duties and responsibilities of all members of this profession are spelled out in Ind. R. Adm. & Dis. 23 § 1. The duty and responsibility of administering these rules are in this court. When a person has been found wanting in meeting these responsibilities and has been suspended or disbarred, then the burden falls upon that person to show that his or her character and attitude has now been rehabilitated to the standards required under Ind. R. Adm. & Dis. 23 § 4.

We adopt and take as our own the findings of fact of the hearing officer, and order that petitioner's petition for reinstatement be denied.

Givan, C.J., DeBruler, J. concur; Prentice, J. dissents with opinion in which Hunter, J. concurs.

### DISSENTING OPINION

PRENTICE, J.—I dissent and agree that the consideration of the petitioner's testimony and its credibility by the original hearing officer in 1973 is res judicata as to her petition for reinstatement. It appears to me that under the majority opinion, one suspended for misconduct, despite his denial of the charges, may never be reinstated without first admitting to the original guilt. Such a condition is a proclamation of the infallibility of our system, which does not and can never exist.

To require the petitioner now to admit that she was guilty of perjury in our original hearing if in fact she was not guilty, and petitioner alone possesses this knowledge, would be for this Court to debauch the principle of remorse as a requisite to reinstatement.

I agree that petitioner's testimony in question is difficult to believe and, if false, constituted an attempted fraud upon the Court in the disbarment proceedings. Obviously, it was not then believed and for that reason alone, if there were no others, a discipline commensurate with such misconduct should have been invoked. It now appears that it may not have been. If it was not, however, we should, nevertheless, live by our decision—as we expected the petitioner to do. The disciplines which we invoke should be commensurate with the circumstances known to us at that time. Matters of reinstatement, following suspension, should be determined by subsequent circumstances, with exception only for facts not known or reasonably ascertainable at the time of the suspension order.

Hunter, J. concurs.

NOTE.—Reported at 379 N.E.2d 431.